```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BEATRICE M. HEGHMANN and ROBERT A.   :
HEGHMANN,                            :
                                     :
     Plaintiffs,                     :
                                     :
          v.                         :      09 Civ. 5880 (BSJ)
                                     :           Order
KATHLEEN SEBELIUS, Secretary,        :
Department of Health and Human       :
Services, NANCY-ANN DEPARLE,         :
Director, White House Office of      :
Health Reform, and CHARLENE          :
FRIZZERA, Administrator, Centers     :
For Medicare and Medicaid Services,  :
                                     :
     Defendants.                     :
------------------------------------X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Beatrice M. Heghmann and Robert A. Heghmann (collectively, "Plaintiffs") bring this suit primarily alleging that the health care provisions of the American Recovery and Reinvestment Act of 2009 (the "Stimulus Act"), Pub. L. No. 111-5 (2009), are unconstitutional. In response, Defendants Kathleen Sebelius, Nancy-Ann Deparle, and Charlene Frizzera (collectively, "Defendants") each move to dismiss Plaintiffs' Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court GRANTS their motion.

1

## BACKGROUND[1]

The Health Information Technology for Economic and Clinical Health Act ("HITECH Act") was enacted on February 17, 2009 as part of the Stimulus Act. In the HITECH Act, Congress expresses a goal that health care providers in the United States use electronic health records ("EHRs") for all patients by 2014. HITECH Act § 13101. Bringing this lawsuit prior to the recent passage of a major health care reform bill, Plaintiffs contend that the White House Office of Health Reform is "designing a new system for delivering medical care to every person in the United States" which, pursuant to the HITECH Act, allegedly would result in the federal government's supervising health care information of people who are currently enrolled in private insurance. (Compl. ¶¶ 11-16.) Plaintiffs seek to enjoin these provisions of the Stimulus Act, claiming that their personal health information is being released without their consent to the Office of Health Reform ("OHR"), Department of Health and Human Services ("HHS"), and others. (Id. ¶ 25.)

Plaintiffs also contend that the HITECH Act undermines the Privacy Rule adopted under the Health Insurance Portability and

---

[1] The following factual allegations are taken from Plaintiffs' Amended Complaint and are presumed to be true for purposes of this motion only. Plaintiff Beatrice Heghmann, represented by her husband Robert Heghmann, filed this action on June 25, 2009. With disbarment proceedings in this Court pending against Robert Heghmann, Plaintiffs elected to amend the complaint to add Robert Heghmann as a Plaintiff and proceed pro se. The Amended Complaint is dated September 28, 2009.

2

Accountability Act (id. ¶¶ 17, 19-21), and that the Act authorizes the government to monitor private health care providers' treatments to ensure that Plaintiffs' doctor is providing services that the federal government deems appropriate. (Id. ¶¶ 22, 27-28.)

Plaintiffs also assert that the HITECH Act's requirements will effectively terminate the accrediting function of the Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO"), because American healthcare providers will no longer be able to meet JCAHO's high standards for safety and patient care. (Id. ¶¶ 32-33.) According to Plaintiffs, this federal interference in health care decision making will undermine their personal security, contrary to the Constitution. (Id. ¶¶ 51-52.)

Plaintiffs also allege that Plaintiff Beatrice M. Heghmann, as a health care professional and as a payer of health insurance premiums, has been adversely affected by the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), because EMTALA requires that hospitals provide care to anyone needing emergency treatment. (Id. ¶¶ 73-78.) Plaintiffs assert that EMTALA is thus an unconstitutional taking. (Id. ¶ 78.) Plaintiffs further claim that Medicare underpays health care expenses, and that if a public plan option is enacted as part of health care reform that extends these underpayments to other hospitals, it would also be an unconstitutional taking. (Id. ¶

3

67-71.) Finally, Plaintiffs allege that the Office of Health Reform and the Department of Health and Human Services have violated the Privacy Act by sharing information without observing Privacy Act restrictions. (Id. ¶¶ 53-56.)

**LEGAL STANDARD**

Article III standing is properly challenged through a motion to dismiss under Rule 12(b)(1). Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). A district court must generally establish that a plaintiff has Article III standing first, before deciding a case on the merits, such as on a Rule 12(b)(6) motion to dismiss. See id. at 85 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Standing is challenged on the basis of the pleadings, and thus the Court accepts as true "all material allegations of the complaint, and must construe the complaint in

4

favor of the complaining party." Bldg. & Constr. Trades Council v. Downtown Dev., Inc., 448 F.3d 138, 144 (2d Cir. 2006).

The constitutional minimum for standing contains three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,
>
> Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.
>
> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted) (hereinafter Lujan). "[A]t the pleading stage, standing allegations need not be crafted with precise detail." Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003) (citing Lujan, 504 U.S. at 561).

**DISCUSSION**

Defendants seek to dismiss Plaintiffs' Complaint on various grounds, including that Plaintiffs lack standing to maintain this action and fail to state a claim.

1. "Injury In Fact" Standard

A plaintiff lacks standing if the complaint fails to allege that the plaintiff has suffered an injury in fact. To

5

demonstrate this, plaintiffs must allege an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted).

To show that an injury is "concrete and particularized," plaintiffs must allege that they "personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of" Defendants. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). "[T]he injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1.

For an injury to be "actual or imminent," plaintiffs must show that they "ha[ve] sustained or [are] immediately in danger of sustaining some direct injury," City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983), that is not "conjectural or hypothetical," Lujan, 504 U.S. at 560. "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Instead, the threat of future injury must be "sufficiently real and immediate [so as] to show an existing controversy." Lyons, 461 U.S. at 103.

2. Plaintiff Does Not Allege An Injury In Fact

Plaintiffs fail to allege any "concrete and particularized" injury that affects them in a "personal and individual way."

6

Lujan, 504 U.S. at 560 & n.1. Plaintiffs also fail to allege an "actual or imminent" injury. Id.

The central claim of Plaintiffs' Complaint is that the HITECH Act's encouragement of the use of electronic health records ("EHRs") threatens Plaintiffs' privacy. The HITECH Act requires the federal government to adopt standards for EHRs but expressly states that such standards are voluntary for private entities. 42 U.S.C. §§ 300jj-15, 300jj-16, 300jj-17(d). The HITECH Act also provides financial incentives for Medicare- and Medicaid-participating providers to adopt EHR standards but does not mandate it. Id. §§ 4101-02, 4201. Plaintiffs' Complaint does not allege that Plaintiffs use any federally provided health care or Medicare or Medicaid. (Compl. ¶¶ 2, 4.) They therefore assert no injury under the statutes that they claim are unconstitutional. "[A] plaintiff raising only a generally available grievance about government — claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large — does not state an Article III case or controversy." Lujan, 504 U.S. at 573-74.[2]

---

[2] Although Plaintiffs' Complaint alleges that "[e]very health care provider is being required to acquire and implement Health Information Technology designed by the Office of Health Reform and HHS" (compl. ¶ 12), that assertion (unaccompanied by any citation) directly contradicts the statutes Plaintiffs complain of, and deserves no weight from this Court. See supra.

Plaintiffs argue that they qualify for standing because of their status as taxpayers, and their interest in this suit is to "prevent the expenditure of significant amounts of federal taxpayer dollars to fund an unconstitutional purpose." (Compl. ¶ 66.) However, "[i]t has long been established ... that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government." Hein v. Freedom from Religion Foundation, 551 U.S. 587, 593 (2007) (plurality). For a court to entertain such a "generalized and attenuated" interest, id. at 599-600, would be "not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and co-equal department, an authority which plainly [the courts] do not possess," Mass. v. ellon, 262 U.S. 447, 488-89 (1923).

3. Plaintiffs Do Not Qualify Under the "Flast" Exception

In their opposition papers, Plaintiffs argue that they are an exception to this general taxpayer standing rule under Flast v. Cohen, 392 U.S. 83 (1968). In Flast, the United States Supreme Court granted taxpayer standing to plaintiffs alleging violations of the First Amendment's Establishment Clause. Id. at 105-06. Flast created a "double nexus" test which grants taxpayers standing if they can (1) "establish a logical link between that status and the type of legislative enactment attacked," and (2) "establish a nexus between that status and

8

the precise nature of the constitutional infringement alleged." Id. at 102-03.

Plaintiffs do not qualify for the Flast exception. The Supreme Court has repeatedly held that the Flast exception is limited to challenges by taxpayer plaintiffs asserting that congressional appropriations violate the Establishment Clause. Although "Flast held out the possibility" that another constitutional provision could satisfy the test, in fact "only the Establishment Clause has supported federal taxpayer suits since Flast." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 347 (2006). See also Hein v. Freedom from Religion Foundation, Inc., 551 U.S. 587, 593 (2007) (plurality). "[I]n the four decades since its creation, the Flast exception has largely been confined to its facts." Id. at 609-10. The Supreme Court has "declined to lower the taxpayer standing bar in suits alleging violations of any constitutional provision apart from the Establishment Clause." Id. Plaintiffs' claims are not grounded in the Establishment Clause and thus do not qualify for the Flast exception.

4. Third-Party Harm Claims

Plaintiffs allege other third-party harms, none of which establish standing. They claim that the establishment of the Federal Coordinating Council for Comparative Effectiveness Research, ARRA § 804, 42 U.S.C. § 299b-8, "lays the groundwork

for a permanent government rationing board," and the Council will "prescribe what care, procedures or medications [plaintiffs] will receive in place of the doctors chosen by the Plaintiffs and the Plaintiffs themselves." (Compl. ¶ 22.) That conclusory assertion is completely unsupported by the statute; the Council's purpose is to "foster optimum coordination of comparative effectiveness and related health services research ... with the goal of reducing duplicative efforts and encouraging coordinated and complementary use of resources," and it is expressly forbidden "to mandate coverage, reimbursement, or other policies for any public or private payer." 42 U.S.C. § 299b-8(a), (g)(1).

Similarly, Plaintiffs allege that the National Coordinator for Health Information Technology "will monitor treatments to make sure the Plaintiffs' doctor is doing what the federal government deems appropriate and cost effective." (Compl. ¶ 27.) That, again, finds no support in the statute, as the National Coordinator is charged with reviewing health information technology standards to ensure the security of patient information, improve health care quality, and reduce costs. 42 U.S.C. § 300jj-11(b),(c). Nothing in the statute gives the National Coordinator anything close to the power Plaintiffs assert.

Plaintiffs also claim that health-care reform will lead to the demise of the Joint Commission on the Accreditation of Healthcare Organizations, which in turn will lead to the lowering of the quality of American healthcare. (Compl. ¶ 33.) Such a claim is by definition a "conjectural or hypothetical" injury that is not sufficient to allow standing. Lujan, 504 U.S. at 560 (internal quotation marks omitted); see also Hein, 551 U.S. at 599-600. Plaintiffs have failed to demonstrate standing regarding these claims, and accordingly these claims must be dismissed.

5. Takings and Due Process Property Claims

Finally, Plaintiffs' two property claims fail to state a claim upon which relief may be granted. First, Plaintiffs claim that Medicare underpays hospitals; that the Stimulus Act "contemplates," and "legislation currently under consideration in the Congress anticipates" an expansion of Medicare; that costs to hospitals will therefore increase and insurance premiums will go up; and thus Plaintiffs have been deprived of their property. (Compl. ¶¶ 68-71.) This claim challenges legislation that was not enacted at the time of the filing of the Complaint and is therefore dismissed.

Second, Plaintiffs allege that the Emergency Medical Treatment and Active Labor Act ("EMTALA"), by mandating emergency care, increases costs to hospitals and therefore

Plaintiffs' insurance premiums in violation of either the takings or due process clause of the Fifth Amendment. (Compl. ¶¶ 73-78.)

Government regulations often impose some cost on some person somewhere, but "'[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.'" Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 473 (1987) (quotation omitted). Thus a regulatory takings claim faces a "heavy burden." Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 375 (2d Cir. 2006). Courts must consider three factors: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. (internal quotation marks omitted).

All three factors decree that no taking has occurred here: the economic impact is totally speculative and minor even if realized; Plaintiffs have no investment-backed expectations in future payments of health insurance premiums (the amount of which can change for any number of reasons); and the EMTALA statute, which provides hospital care to those in need of emergency treatment, "burdens the plaintiffs in order to promote the common good." Id. Cost shifting is not a taking: "Given the

12

propriety of the governmental power to regulate, it cannot be said that the Takings Clause is violated whenever the legislation requires one person to use his or her assets for the benefit of another." Id. (quoting Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 223 (1986)).[3]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint is GRANTED in its entirety. The Clerk of the Court is directed to close the case.

**SO ORDERED:**

*[signature]*

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         May 13, 2010

---

[3] To the extent Plaintiffs raise a claim regarding Medicare as a taking, that has already been rejected by the Second Circuit: Medicare is a voluntary program, and therefore cannot give rise to a takings claim. Garelick v. Sullivan, 987 F.2d 913, 916-17 (2d Cir. 1993).

13